Good morning, Your Honors. My name is Tony Gallagher. I'm the Federal Defender for the District of Montana. I'm here on behalf of the Defendant Appellant, Royal Gene Jones, Sr. Your Honors, we raise five issues in our brief, and they are, frankly, all interrelated. First and foremost, we have indicated to the Court that the departure under the Guidelines System for under-representation of criminal history was wrong. That particular departure must be significantly, in other words, to grant that departure based on criminal history or under-representation of criminal history, the criminal history must be significantly more serious than most defendants in the same criminal history category. Mr. Jones, according to the original calculation in the pre-sentence investigation report, was a criminal history category 4. The District Judge, based on his assessment of that record, determined that it was appropriate to depart upward under the Guidelines Scheme to a criminal history category 6. And what's the difference? What's the practical difference? The practical difference is that the Guideline range, I believe, under category 4 would have been 51 to 73 months, and under the new calculation, it was 70 to 87, I believe. Well, he was sentenced to 70 months. That is correct. I think the first period, and I ask because I'm not always have trouble calculating these. As I calculated, the first range would have been 51 to 63, and instead he wound up in a range of 70 to 89 or 88, I can't tell. And he was sentenced to 70 months. That's correct. So if we assume that's correct, then however you get to it, the first range, which you're arguing for, is 51 to 63, doesn't the question become whether 70 months would have been unreasonable as an increase, but not a dramatic increase, over the Guideline range, given that we're in an advisory guideline world now? Well, we are under an advisory guideline rule now, but under Cardi, Zavala, and Riedel, Gall, and Kimbrough, the guidelines have to be calculated accurately. Correct. And if there is an error in the procedure in getting to that guideline range, then that guideline factor is wrong. The analogy I use is that the guidelines are advisory only, but the judge is getting bad advice if he incorrectly calculates the guidelines. Our argument, at least with this particular point, is that he incorrectly calculated that guideline, moving up two criminal history categories from 4 to 6. And that's one point. And the other point is that his, that is, Mr. Jones' prior criminal record, was incorrect. It was not significantly more serious than other individuals in Category 4. Just to make sure I understand, the argument you're presenting to us is the calculation was wrong, and it's correct. We require the district court to calculate first. And that, by itself, is a basis for saying, no, you've got to go back and recalculate. But that leaves the door ajar to reaching exactly the same result, unless it can be argued that a departure from an increase or a guideline range of 51 to 63 compared to against a sentence of actually 70, you'd have to argue that's unreasonable if it goes back and the judge does exactly the same thing. He says, okay, fine, I recalculate criminal history 4. This is the range. I still give him 70 months. Aren't we really back in the same position? I know what the law says we're going to do, but I'm trying to figure out what's really significant here. What's going to make a difference in the end? Well, Your Honor, not to avoid your question, I would have to say that Judge Lovell could do exactly the same thing that he did. He could still impose a 70-month sentence. And then we'd have the next appeal on the issue as to whether that was reasonable or unreasonable. That would, of course, be up to Mr. Jones. Your Honor. What's happening with the rule? Has a Rule 35 motion been made? No, Your Honor. Is it still pending? There is no motion pending at this point. Mr. Jones, well, I don't want to go speak outside the record, but Mr. Jones and Mr. Thageter are negotiating that particular issue. Because the judge seemed to work that into his analysis, that that was sort of out there still as a possibility of relief. He did, Your Honor. And when we were talking about the fourth of my arguments, and that is that the judge should have looked a little bit more further into the government's bad faith, whether or not that refusal to give the 5K1.1 at that point should have been at least an evidentiary hearing into whether or not there was bad faith. If the court will recall from the record, Mr. Jones found out shortly before the sentencing that the government was not going to move under 5K1.1 for a departure. And so he took it upon himself to file a pro se motion asking for another attorney and asking for an investigator to investigate the government's lack of interest in the information that he had provided and denigrating the information that he had provided in refusing to give the 5K1.1. So in essence, Mr. Jones was saying, Judge, I really would like you to look into this. I don't have anything at my disposal to tell you that the government acted arbitrarily, in bad faith, or unconstitutionally. But I need your help, Judge, to get me into some information, an evidentiary hearing at the very least, to determine whether or not the government has acted in bad faith. And I know what Wade and Awad and Quatch all say. That particular motion is solely within the discretion of the government. But those cases also are tenored by the language which says the government can't withhold that motion for an unconstitutional or arbitrary purpose. And that's why I cited to Redondo Lemus in that when we're talking about a district court, the district court does have the authority. Unlike what Judge Lovell said, I don't have the authority to help you, Mr. Jones, in essence is what the district judge said. But he did have the authority. He didn't have the authority to grant the motion without the government's request. But he did have the authority to at least investigate Mr. Jones's claim that the government had been holding back its 5K1.1 motion arbitrarily. I want to go back to my colleague's questions, Judge Clifton. After Booker, isn't the upward departure situation and application of the law in that area reviewed only for an abuse of discretion? Isn't that what Cantrell says? Well, when you're talking about an upward departure under the guideline scheme, as opposed to a variance under the statutory scheme or the Booker scheme, if you will, what Carter and Zavala say is the judge still has to procedurally do it correct. Well, I understand. But I'm really looking at, even if we get to the guideline range that they set, then he departs, an upward departure. And his upward departure is really based on the criminal history category and whether the criminal history category fits the definition that you've adequately explained to me. Now, if I look at the criminal history here in this particular situation, his initial criminal history score didn't reflect either the seriousness of the history or the likelihood of recidivism, they're saying, because he has a number of prior convictions. In fact, Jones's criminal history described as the worst criminal history he's ever seen in any case. We can go through history of robbing people, violating drug laws. Criminal history was extraordinary. Prior offenses were serious. Well, if we go through that, and I'm going to review the district judge's upward departure under abuse of discretion, starting with the right zone to begin with, how do I say it wasn't an abuse of discretion to suggest he should have had the upward departure under the guidelines? Well, frankly, Judge Smith, you can't necessarily say that it was an abuse of discretion. But what you can say is that he went two levels and didn't explain why he went from four to six, and what you can say is that he didn't follow the guideline scheme in finding that this was a significantly more serious criminal history than other individuals in criminal history category four. What's he got to say to say it's more significantly? Well, what he has to do, Your Honor, is compare that with other individuals in criminal history category four, and he has to find that it is significantly more serious, and he has to explain why he skipped over criminal history category five to get to criminal history category six, and there's no mention of that analysis at all. We have to look at the... He wound up with a sentence that surely would have fit within the guideline range if he had a history five. Just looking what the ranges for four and six are, he went to the low end of six. Seventy months would have been within the range for five. I concede that. So we're kind of dancing on the end of a pin here because of the way the structure has been set up, but at some point, don't you just take a step back? Or doesn't Mohammed tell us to take a step back and try to figure out what really matters here? Well, Mohammed does tell us that, but what we can't ignore is Cardi and Zavala, which say you have to be procedurally correct. Mohammed preceded Cardi and Zavala, and as Judge Reimer said, all of our cases which are at odds with Gall, Kimbrough, and Rita are out. And Mohammed says exactly what the government says it says in its brief. If you're going to come up with the same results, so what? But that's not what Cardi and Zavala say. Cardi and Zavala say it's not a so what. You have to be procedurally accurate in your guideline calculation. And I know that I've got seven seconds or just a few seconds left. Actually, I don't have any seconds left. But I don't want to miss my miscalculation argument. And in that particular instance, we are asking the Court to look at the preponderance of the evidence standard when we're talking about solicitation to commit the crime of robbery. Under 2X, it is not preponderance of the evidence. And I would ask the Court to look at the Rome case, which discusses that it should be reasonable certainty when we're talking about the amount. My time is up. Thank you for your time. Counsel. Good morning. My name is Joe Thagard. I'm an assistant United States attorney from Helena, Montana. I prosecuted this matter. I'll turn first to the issue of the guideline calculation by the Court and what it phrased as the departure concerning underrepresented criminal history. How do you understand the difference between departures and variances? Well, Your Honor, my understanding from Mohamed is that, essentially, we now review what had previously been called departures under this sort of. . . The guidelines, yeah. Yes, yes, under this essentially unitary system of review. And so my understanding is that we've really abolished a distinction between what would have traditionally been a departure under the guidelines, recognized and sort of articulated by the guidelines, as opposed to what we now do in reaching a reasonable sentence. I might have agreed with you, and logically I can understand that, and yet with regard to having to give notice, our Court has maintained the distinction in interpreting the Supreme Court's recent decision as applying only, and here I'm probably going to get it backwards, but applying to variances and not to departures. So help me here. What's the way out of this? Well, I think the way out of this is that there's some language in Mohamed that talks about the fact that we're certainly not scrapping what traditionally had been the sort of guideline departures and that those can provide the sort of guidance to the Court about whether or not a sentence is reasonable. And I think that that's the key here. And I think that sort of regardless how you slice this loaf of bread, when you get right down to it, even if you were to approach it sort of in the manner that Mr. Gallagher has, where we look at this conceptually and say, well, what is the evidence here that this man has an underrepresented criminal history? I think even if we do it under the older approach of the guidelines, this guy qualifies. I mean, he's got this history, essentially, of robbing people, much of which is unscored. He's spent a considerable amount of time. I think that goes to his recidivism. He has a history of drug offenses. These are not necessarily the sort of petty offenses that this Court condemned him. And they weren't scored in the normal course because they were older? Yes, because of the age, Your Honor. Okay. And, you know, as Judge Lovell, who's been on the bench a long time, described this as being one of the worst criminal histories he'd seen or come across, I think that that, in fact, as defense counsel said, we can't really argue with the criminal history. Mr. Jones is a serious criminal. He's committed serious offenses. He's a recidivist. He'd only been out of prison for a brief period when this crime occurred. And so I think that even if we were to sort of go back, if that's the way to phrase it, go back to the mandatory guidelines system, I think that under the guidelines that this was an appropriate departure. Turning to the issue of the government's refusal to file a 5K in this case, the bottom line is there was a dispute between Mr. Jones and the government about what the value of this information was. And he didn't allege that there was anything particularly arbitrary or capricious about the government, that we were motivated by bad faith in this case. He simply said, I want one result. The government won't give it to me. And I think that in that particular case, he didn't make the sort of showing that's required by Wade to really entitle himself to a hearing. That being said, I think it is notable that Judge Lovell had this fairly lengthy discussion in chambers with him about the mechanics of this. Part of what makes this difficult is that information comes out or can be assessed and the government can reach its decision at different stages in the process, including after sentencing. Absolutely. And the case law requires us to review it at the stage you're at at the time, but it is a continuing process and it's not entirely clear. I find it very easy to understand. The government may fairly say at one point in time, the time of sentencing, we're not prepared to make the request now, but the door's not closed on it. It just gets hard figuring out how you deal with it when it comes down the road. And so it's a continuing process, and I want you to say something that's not in the record here, but is there anything that we can look to or is there an expectation that something may yet happen? You know, Your Honor, I think I can fairly say at this point that I don't see anything happening. We've been looking at this, but I just don't see this panning out. That's the only thing I can tell you, and even that's going outside the record. And then the final issue is what the standard is that the court's got to employ in determining the loss amount here. And my point on that is simply that I don't think that the term reasonable certainty is necessarily inconsistent with a preponderance of the evidence. With that being said, and unless the court has any other questions, I'll return to my seat. I have none. All right. Thank you, counsel. Thank you. U.S. v. Jones will be submitted. We have previously submitted United States v. Nader and Lee on the briefs.
judges: Wardlaw, Clifton, Smith